11th Court of Appeals
Eastland, Texas
Opinion
 
Deon Silven Wesber
            Appellant
Vs.                  No. 11-03-00038-CR -- Appeal from Collin County
State of Texas
            Appellee
 
            The jury convicted Deon Silven Wesber of the offense of aggravated assault and found that
he used a deadly weapon during the commission of the offense. The trial court assessed punishment
at confinement for 11 years. We affirm. 
            Appellant presents 16 points of error on appeal. In the first 14 points, appellant challenges
the legal and factual sufficiency of the evidence in support of his conviction. In order to determine
if the evidence is legally sufficient, we must review all of the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State,
17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the evidence is factually sufficient, we
must review all of the evidence in a neutral light and determine whether the evidence supporting
guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the
evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the
overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly
unjust. Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958
S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
            Appellant was charged with the commission of aggravated assault by various means,
including: intentionally, knowingly, and recklessly causing serious bodily injury to his wife by
choking or strangling her with his hand; intentionally, knowingly, and recklessly causing serious
bodily injury to his wife by choking or strangling her while using his hand as a deadly weapon;
intentionally, knowingly, and recklessly causing bodily injury to his wife by choking or strangling
her while using his hand as a deadly weapon; and intentionally, knowingly, and recklessly causing
bodily injury to his wife by striking her on the head with a wooden box, which was alleged to be a
deadly weapon. A general verdict form was submitted to the jury, allowing the jury to convict
appellant of aggravated assault under any of the theories charged in the indictment. The jury found
appellant guilty “as charged in the indictment” and found that he used his hand, not a wooden box,
as a deadly weapon. Consequently, we must determine if the evidence was sufficient to show that
appellant committed the offense of aggravated assault by intentionally, knowingly, or recklessly
causing either bodily injury or serious bodily injury to his wife by choking or strangling her with his
hand and that he used his hand as a deadly weapon during the commission of the offense. See TEX.
PENAL CODE ANN. § 22.02(a) (Vernon Supp. 2004). 
            The record shows that the victim, appellant’s wife at the time, suffered from a stroke on
January 25, 2000. The victim also had a swollen face, swollen eye, and broken ribs. According to
the victim’s neurosurgeon, Dr. John Tompkins, the victim’s stroke was caused by a blood clot
breaking loose from the damaged carotid artery at the front of the victim’s neck and traveling up to
the brain where it blocked some arteries. The victim’s carotid artery had been dissected by some
type of blunt force trauma, which was evidenced by a bruise on the victim’s throat. The shape of the
bruise over the left carotid artery “suggested” a finger. Dr. Tompkins testified that the injury to the
carotid arterial wall caused both the dissection and the clot. Dr. Tompkins noted in his evaluation
that the type of stroke suffered by the victim as a result of the carotid dissection “can produce fatal
brain swelling.” As a result of this injury, the victim spent about two weeks in the hospital and then
went to rehab to learn to walk, move her arm, and talk again. At the time of trial in October 2002,
the victim still suffered from a loss of feeling in her right side and had difficulty reading, writing,
speaking, and putting her thoughts into sentences. Dr. Tompkins thought that these impairments
would be “lifelong.” 
            As to how the victim received her injuries, the versions given by appellant and the victim
differed greatly. At the time of the offense, the victim and appellant were in the process of getting
a divorce but were still living in the same house. The victim testified that appellant had taken her
car that morning and that she needed it. She called appellant’s cell phone and left two messages for
him. In one of those messages, she stated that she was going to take appellant’s jewelry and rent a
car. The victim testified that she had hidden appellant’s jewelry. 
            The victim testified that appellant came home, ran upstairs, got in her face, and demanded
his jewelry. Appellant was cursing. The victim suggested an exchange – the car keys for the
jewelry. Appellant grabbed the victim’s ponytail and “sucker” punched her hard in the temple,
causing her to lose her balance and fall on the bed. Appellant then hit her repeatedly in the head. 
Appellant grabbed the victim’s hair with one hand, picked her up by the throat with the other hand
so that her feet were barely able to reach the floor, and then choked her down to the floor. The
victim testified that she could not breathe and that her body became limp. When appellant let go,
the victim began coughing. Appellant grabbed the victim by her hair, drug her across the floor like
a dog, and broke a wooden jewelry box over the victim’s head. The victim fell to the floor, and
appellant punched her in the ribs. During the encounter, appellant was yelling and asking where his
jewelry was. After getting punched in the ribs, the victim played dead. Appellant left the room in
a hurry and called someone on the phone. The victim got up, called 9-1-1, walked down the stairs,
and collapsed in the foyer near the bottom of the staircase. Paramedics arrived shortly thereafter. 
            Appellant denied inflicting the injuries. He testified that he had taken the victim’s car that
morning so that he could service it for her. He returned home, changed the oil, and called his
attorney to find out what to do about his jewelry. Appellant testified that, while on the phone, he
heard a commotion and subsequently found the victim lying at the bottom of the stairs. Appellant
tried to help her up but then called 9-1-1 at her insistence. He went outside to wait for the
paramedics. 
            Appellant testified that he did not know what happened to the victim. He originally thought
that maybe she had fallen down the stairs; but later, after the victim told the paramedics that appellant
beat her up, he thought that maybe she had inflicted the injuries upon herself. Appellant testified that
the victim had previously threatened to harm herself and blame appellant so that he would be arrested
for assault. About three weeks prior to this offense, appellant went to the police station and reported
that the victim was making such threats. A police officer verified that appellant had made such a
report. 
            However, according to Dr. Tompkins, the injury he observed was consistent with choking or
strangling and was inconsistent with falling down the stairs. Furthermore, the victim had no skin
abrasions from the carpeted stairs. 
            After reviewing the entire record, we hold that the evidence is both legally and factually
sufficient to support the jury’s verdict that appellant intentionally, knowingly, or recklessly caused
serious bodily injury to the victim by choking or strangling her; that appellant intentionally,
knowingly, or recklessly caused bodily injury to the victim by choking or strangling her; and that
appellant used his hand as a deadly weapon. Appellant’s Points of Error Nos. 1 through 14 are
overruled. 
            In Point of Error No. 15, appellant contends that he received ineffective assistance of counsel
at trial because trial counsel did not require Dr. Tompkins to testify in person. In order to determine
whether appellant’s trial counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel’s representation fell below an objective standard of
reasonableness and, if so, then determine whether there is a reasonable probability that the result
would have been different but for counsel’s errors. Strickland v. Washington, 466 U.S. 668 (1984);
Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999); Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Cr.App.1986). In order to assess counsel’s performance, we must make every effort to eliminate
the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from
counsel’s perspective at the time. We must indulge a strong presumption that counsel’s conduct fell
within the wide range of reasonable professional assistance; and appellant must overcome the
presumption that, under the circumstances, the challenged action might be considered sound trial
strategy. Stafford v. State, 813 S.W.2d 503, 508-09 (Tex.Cr.App.1991).
            The record shows that Dr. Tompkins had been subpoenaed to testify at the trial but that the
trial proceeded quicker than anticipated. The prosecutor reached Dr. Tompkins as a witness a day
early. Dr. Tompkins was scheduled for surgery at that time. The trial court suggested that the State
and appellant consider using Dr. Tompkins’s testimony from appellant’s previous trial, which had
resulted in a hung jury. The prosecutor and appellant’s trial counsel agreed to that suggestion. 
Appellant’s trial counsel agreed to read the doctor’s prior testimony into the record “subject to getting
some answers from him or calling him tomorrow for just a couple of follow-up questions.” A
transcript from the previous trial was used by the attorneys and a male witness to read the questions
and answers into the record. The State and appellant’s trial counsel were allowed to read/ask
whatever questions they chose from the transcript. Dr. Tompkins was not called for any follow-up
questions. 
            We cannot hold that trial counsel was ineffective for making such a determination. At the
previous trial, appellant was represented by an attorney who was obviously allowed to thoroughly
cross-examine Dr. Tompkins. It was conceivable for appellant’s trial counsel in the retrial to believe
that having a stand-in witness reading from a cold record would influence the jury less than a personal
appearance by Dr. Tompkins. Appellant has not shown that Dr. Tompkins would have testified more
favorably if he had testified in person. Thus, we cannot determine that trial counsel’s representation
fell below an objective standard of reasonableness. Furthermore, there is nothing in the record
indicating that the result of the proceedings would have been different if Dr. Tompkins had testified
in person. Appellant’s fifteenth point of error is overruled. 
            In his final point of error, appellant argues that the trial court erred by permitting the hearsay
testimony of paramedic Dean Boyce. Boyce was allowed to testify over objection that the victim said
she had been beaten up. Boyce did not testify that appellant had beaten the victim or that the victim
said appellant had beaten her. Statements that are made for the purpose of medical diagnosis or
treatment, that are reasonably pertinent to a diagnosis or treatment, and that describe medical history
or “the inception or general character of the cause or external source” of the pain or symptoms are
exceptions to the hearsay rule. TEX.R.EVID. 803(4). The victim’s statement to the attending
paramedic that she had been beaten up falls into the Rule 803(4) exception. The trial court did not
abuse its discretion by permitting Boyce’s testimony. Appellant’s sixteenth point of error is
overruled. 
            The judgment of the trial court is affirmed. 
 
                                                                                                TERRY McCALL
April 15, 2004                                                                        JUSTICE
Do not publish. See TEX.R.APP.P. 47.2(b). 
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.